IN THE
TENTH COURT OF APPEALS
No. 10-08-00014-CR


GARY LAWAYNE BELL,

                                                                                Appellant

 v.

THE STATE OF TEXAS,

                                                                                Appellee

_____

From the 13th District Court
Navarro County, Texas
Trial Court No. 31,223

_____

## MEMORANDUM  OPINION

_____

Appellant Gary Lawayne Bell was convicted of the felony offense of possession of a controlled substance (Penalty Group One—cocaine, less than one gram) in a drug-free zone and was sentenced to seventeen years in prison.  He appeals, asserting in one issue that the evidence is legally and factually insufficient.  We will affirm.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have

found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7. The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

Bell argues that the evidence is insufficient to affirmatively link him to the contraband. The Court of Criminal Appeals has provided the following explanation for

the "so-called 'affirmative links' rule":

> [I]n a possession of a controlled substance prosecution, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.*, "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005)) (footnotes omitted). Thus, we examine the record for direct or circumstantial evidence that established that Bell exercised control, management, or care over the controlled substance and knew it was contraband. *See id.* at 161-62.

The evidence shows that Bell and about fifteen to twenty others were standing on the property of the Corsicana Housing Authority at approximately 11:30 p.m. in the vicinity of a streetlight when four Corsicana police officers arrived to execute an arrest warrant for Bell. Most of the group, including Bell, fled. Officer Williams pursued Bell on foot, and Officer Morris pursued him in a patrol car to where they were able to surround Bell at a row of parking spaces. Bell stopped briefly next to a parked car, and Morris stopped his car, got out, and ordered Bell to show his hands and get on the

ground. Bell then ran around the parked car, ran along a sidewalk, and then ran back in between some other parked cars. Williams and Morris were closely behind Bell and both said that they saw him remove a cellophane packet from the waistband of his trousers and throw it on the ground. As Bell continued to flee, he collided with a third officer, Officer Hudson, and was taken into custody. Morris then retrieved the discarded cellophane packet, and it was later determined to contain cocaine.

Williams and Morris each testified that they personally saw Bell reach into his waistband and discard the cellophane packet as he ran between two cars and just seconds before he ran into Hudson. Morris recovered the packet about thirty seconds after Bell was detained, and all three officers testified that no one else was between the two cars in that brief period.

Bell called four witnesses who testified favorably for him. Laketha Lusk, who had four theft convictions, was on probation for theft, and was sitting in a car with two cars between her and the location where the cocaine was recovered, testified that she was able to see Bell when the officers claim that he discarded the cocaine and that she did not see Bell reach into his waistband or discard anything. Chiquita Reese, whose family had been friends with Bell's mother for some time, said that she saw Bell fleeing and that she did not see him throw anything on the ground.

Joshua Ellison, Bell's cousin, had been sitting in a car parked in the row of parking spaces and got out and stood on the sidewalk when the police arrived. He said that he did not see anything in Bell's hands during the pursuit and that Bell kept his hands up as he ran from the police. Loretta Beachum, Bell's mother, said that she did

not see Bell reach into his waistband or discard anything and that Bell kept his hands up as he ran from the police. There was at least one car between her and the location where Bell was arrested.

Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Bell exercised control, management, or care over the cocaine. The evidence is legally sufficient.

Bell's factual sufficiency challenge focuses primarily on the discrepancy between the two officers' testimony and his four witnesses' testimony, arguing that the "greater weight" of the evidence was in Bell's favor. As we have stated:

> The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers*, 125 S.W.3d at 670. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614; *Jaggers*, 125 S.W.3d at 670.

> The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. *See* GEORGE E. DIX & ROBERT O. DAWSON, 42 TEXAS PRACTICE—CRIMINAL PRACTICE AND PROCEDURE § 36.69 (Supp. 1999). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation

of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

*Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

*Childress v. State,* 285 S.W.3d 544, 547 (Tex. App.—Waco 2009, pet. filed).

By finding Bell guilty, the jury obviously believed the police officers and disbelieved Bell's witnesses, and the record in this case warrants our deference to the jury's credibility determination. As the sole judge of the weight and credibility of the evidence, the jury bore the burden of accepting or rejecting Bell's witnesses' version of the events. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Therefore, considering all of the evidence in a neutral light, we find that the evidence is factually sufficient to support the jury's guilty finding. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust.

We overrule Bell's issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed August 26, 2009
Do not publish
[CR25]